The next case on for argument is Risoli v. Nielsen. Good morning, Your Honors. John Jessen for the Parliaments, Joseph Risoli and Jose Villalobos. May it please the Court, the USCIS, United States Citizenship and Immigration Services, in the denial of the I-140 petition on the basis of marriage fraud, was an arbitrary, capricious abuse of discretion in non-accordance with the law. That decision was also upheld by the Administrative Appeals Office, and the case then moved with declaratory judgment to the federal court, and the court granted the defendant's appellee's motion for summary judgment on the basis that the court held that there was substantial evidence in the record, the certified administrative record, that there was marriage fraud. So what do you do with the evidence in substance where the, I'll call her the former spouse, says, you know, we engaged in this arrangement in order to avoid his being precluded under the immigration laws, that and the variations across witnesses or witness statements in the time when the breakup occurred, I think is what it is. As Your Honor pointed out, the key to, it appears a key to the record, and this is what the appellees point to as far as the substantial evidence, is the fact that there's two withdrawals made by the U.S. citizen spouse petitioner. And, but I think you do have to look at the proba value of those two withdrawals. Our point is that, first of all, neither one was done under perjury, risk of perjury, or was a sworn statement. The first one was done with a notary, but again, there's no. Extremely rare, if not, well, we'll call it extremely rare for this court essentially to tell any fact finder, whether it's the trial court or an administrative agency charged with finding facts, how to weigh and balance information unless, I mean, it's obvious on the face that something is not credible. So can you point to anything that tips that balance so far in your client's direction that we should say the agency abused its discretion and not finding it incredible? I believe, Your Honor, as the lower court pointed out, the, really the issue in reference to the U.S. citizen petitioner was the fact that she's claiming that she was duped by the marriage versus that she was complicit in the fraud of the marriage. I believe that it's very telling that the fact that, first of all, she filed this withdrawal, then two days later she attempted to retract that withdrawal. Now, we don't have the specific letter or the petitioner, you know, retracting that withdrawal, but it is stated in the withdrawal decision of USCIS that she did make that retraction. And then the fact that later on she then filed a new I-130 petition subsequent to withdrawing this application. And not only did she state in that letter, and that was in July 29, 2008. Sorry, that's the wrong date, Your Honor. Basically she filed an intention, July 24, 2007, is a letter stating that now she wants to petition the, Jose Villalobos and also the stepdaughter of Jose Villalobos. So, you know, if she believes she was duped initially, then why is she filing another petition for the same spouse? And, you know, and again the fact that she, you know, tried to retract the initial withdrawal as well. And then she moves forward with that I-130 petition. They have an interview in Chicago, February 2008. Then there was a request for evidence issued subsequent to that interview. And at that point they retained counsel and they submitted numerous documents, phone records, e-mails, insurance, so forth, to, you know, to try to prove the bona fides of the marriage to overcome that request for evidence. And then she filed this July 29, 2008 letter of withdrawal. So, I understand Your Honor's point as far as, you know, examining the record. But this court does have the jurisdiction to review de novo the record and the ... Didn't the agency also rely, though, on, not just on her inconsistent statements about the purpose of their marriage, but the fact that he provided three different dates for when he began living with her and that he provided inconsistent evidence about the dissolution of his first marriage in the Philippines? I mean, there was ample evidence of different sorts that the agency relied on in reaching its conclusion. Why wasn't it entitled to do that? Why doesn't that constitute substantial evidence? Well, I think one thing, Your Honor, is to look at the timeframe of the case. I mean, the marriage was in 2001, June 2001. The I-130 petition was filed in August 2001. Then we have this withdrawal. Then we have this second filing. Then we have the I-140 petition. And then a notice of intent to deny is filed in March 19, 2012. So that's a number of years after the fact. And basically, the appellant only had 30 days in which to reply to this notice of intent to deny. And basically, the appellant was not aware, had any notice up to that point, that this allegation of fraud was being made. You know, they were waiting for a number of years for the I-140 petition, the labor-based application, to be approved. And without any prior notice, they received this, basically, this notice of intent to deny on the basis of a marriage fraud. But nonetheless, I mean, the record shows that there was a 2001 form that he completed, a 2007 form, and a 2008 form that he completed. And a 2012 affidavit in which he gave different dates for when he had lived with Osmena. I think the difficulty there, Your Honors, and as the appellant states in one of his affidavits, is that he was, I guess because of difficulties in marriage, that he was living out of state for a period of time. He was traveling from Connecticut to Chicago during the relationship. But he gave different dates about when that happened. Yes. I mean, I agree. But I think, again, looking at the totality of the evidence of, you know, in the case, again, also looking at the fact that the petitioner misstated certain things. And again, you know, she's claiming that she was duped, she was not complicit in, you know, in any fraud, and yet she's filing petitions and withdrawing them and filing again. So is there any comparable case in which the former spouse says that the marriage was for immigration purposes, and says that twice, where any court has found that the conclusion that there was marriage fraud was arbitrary and capricious? Not that I'm aware of, Your Honor, in that specific instance or under that fact pattern. And just in conclusion, Your Honors, the, you know, under Simcoe v. BIA, it's a two-step standard. The first is whether there's substantial evidence of marriage fraud on the record. And then if it is determined that there is, the next step is for the petitioner, or sorry, for the beneficiary of the application to prove that the marriage was bona fide or that, you know, there's sufficient evidence of that. And, you know, again, here, I mean, really the only point that the petitioner, other than the request for evidence, he had the evidence that there was this notice of intent denied in 2012, some 11 years later after the marriage. Thank you, Mr. Johnson. Thank you. Two minutes for rebuttal. Thank you. Ms. Akari. You've been here before. Yes, and I have been this height before. Right? May it please the Court, there are three things in Mr. Villaloo's A file which taken together constitute substantial and probative evidence of marriage fraud, and it was not arbitrary or capricious for the agency to conclude this. The first item is found in the record at page 462 of the Joint Appendix, and it is Ms. Ozmina's withdrawal of the first I-130 that she filed for Mr. Villaloo's benefit, in which she states, in a sworn statement, the reason for the withdrawal is that my husband used me, the emphasis is hers on used me, so that he can stay legally in the United States. The second is Ms. Ozmina's second withdrawal of the second I-130 found at page 123 of the Joint Appendix, and it is Ms. Ozmina's withdrawal of the first I-130 that she filed for love. He took advantage of me because I'm an American citizen. He married me so he can stay legally in the United States. And the third thing is the conflicting and unresolved evidence presented by the beneficiary regarding, first, whether or not his marriage to Ms. Ozmina was bigamous, and, second, when he began to, when he relocated from Connecticut to Illinois to join her and begin living as husband and wife. So on this record, it was not arbitrary or capricious for the agency to conclude that these three things were substantial and probative evidence of marriage fraud. I want to respond. In dealing with Ms. Ozmina's statements, I mean, she was very inconsistent, and the rest of the evidence seemed generally consistent with a long-distance relationship. Does the agency always believe a former spouse who makes a charge of being used, those kind of things? Potentially. How does the agency approach that kind of conflicting evidence? Such a document could, standing alone, be susceptible to the kind of reading that the court is referring to. And I do think that there may be a way for a reader to thread that narrative needle, right, and come to that conclusion. But that's not the test here. What the agency does is review the entirety of the record and look for, you know, canvas the record, right, look for consistencies, look for inconsistencies, weigh the probative value of the different pieces of evidence that are given to it. And I would note that the petitioner, sorry, the beneficiary was well on notice that this was an issue, right? There was a request for evidence with respect to the second I-130 many years before. This is in the record at pages 207 to 208. And in response to that, Mr. Villalooz and Ms. Ozmina submitted their response. It's found on pages 209 to 386 of the record, in which they attempt to supply bona fides of the marriage. And then later, with respect to this I-140, then at that point the employer, right, who may not have known that there was this issue with this marriage, now he is put on notice at pages 639 to 642 of the record. And so again, the employer and the beneficiary have the opportunity to respond, and certainly they did, at pages 643 to 660 of the record, including a sworn statement from Mr. Villalooz. In the employer's application, should there have been a hearing of some sort where the immigration authorities can assess the credibility of the applicant and his former spouse? No, Your Honor. The opportunity that is afforded to the petitioner and the beneficiary is to deny. And there was nothing foreclosing the employer or the beneficiary from perhaps locating Ms. Ozmina, you know, proffering an affidavit from her to give this apparent anticipated explanation that the appellant seems to be holding out there as a possibility. But I think, for example, the Sagal case, S-E-G-H-A-L, I think I have that right, makes it clear that the agency is not required to hold such hearing or, you know, call any witness in for that purpose. Do they have the opportunity to do that if they think that the record is sufficiently unclear, or do they always do this on the paper record? In my experience, Your Honor, it's done on the paper record. I'm a little hesitant to say it's always or never done in a particular way, only because, for example, this is an I-140 out of the Texas Service Center, and so different service centers may engage in different protocols. And, of course, I am familiar with, through my practice, that sometimes the protocols and the approaches change over time. So I don't know what the standard procedure was in that period of time. But in general, USCIS relies on the record in front of it, gives the beneficiary and the petitioner an opportunity to supplement or respond to, you know, a notice or a request for evidence, and then certainly considers the evidence that was provided. We know from both the Texas Service Center's decision as well as the Administrative Office's AAO decision that they did consider what was proffered by the petitioner. And, you know, the petitioner provided an affidavit in the first instance on this I-140, and then later on appeal provided this document about an annulment, apparently, an apparent annulment back in the Philippines. And both of those, as we discussed in our brief, generated more questions and more conflicts in the evidence than they answered. And so it was perfectly appropriate under these circumstances for the agency to question that evidence and certainly to re-evaluate the other evidence provided by the beneficiary. And I'm certainly not obliged to, you know, credit one particular narrative or one particular version of events over another. They applied their expertise and came to the conclusion that they did. And we view that as clearly not arbitrary and capricious, and therefore we ask to affirm. Thank you, Ms. Aghari. Counsel, just one last thing. Of course. You also ask us to affirm based upon the failure to meet the employment requirement, failure to meet the 60-month period. The appellant says there was plainly 60 months, even to taking into account the discrepancies, because he was employed by Rizzoli for more than 60 months alone, without even taking into account all of the others. Right. Isn't that right? If one assumes that the question is just, well, was it this month or that month, but it was a minimum of a particular number of months, and that's not the view that the agency had. The view that the agency had was, you know, this is your start date, right? This is information that the beneficiary is providing to the agency in an effort to secure a benefit, right? And so we rely on the beneficiary and the petitioner to provide accurate information. And so the agency is entitled to say, you know, we don't credit that. We don't credit that as being a reliable source of evidence in this case. And so the agency's view was that the 60-month requirement was not met. For lack of credible proof. Yes, Your Honor. The regulation, I believe, states that the employer letter has to have the description of the duties and satisfy the requirements of the dates and the beneficiaries information that he provided. Simply cast doubt on that and suggested that he was not a reliable source of information with respect to whether or not he fulfilled those requirements. Thank you. Judge? Fine. Thank you. Your Honor, just to follow up on your question regarding the I-140 petition. And whether an interview is generally conducted in those petitions. In my experience, they are not. I've handled a number of these cases in the past. And I've never had one that's gone to interview for an I-140 petition. Under current environment, that's supposedly going to change in the near future. But I have not seen that happen at this time. But in reference, obviously, to the marriage cases, there always is an interview at the USCIS office. And in this case, there were two interviews. But we do not have the benefit of the results of those. Because a withdrawal was made after each of those interviews approximately. So obviously, at those interviews, they're conducted under oath. And I guess that's another argument on our part. Is that if the petitioner was going to, if she believed, first of all, that this was a fraudulent marriage, obviously, she would have been put under oath at these interviews. But obviously, we don't have anything on the record to state what the result was at. Whether she stated that this was a bona fide marriage. And obviously, she would have been involved in the compilation of the evidence concerning the request for evidence that was done in 2008. And in reference to the appellee's point concerning the fact that there was an opportunity to respond, again, 2008 was where the response to the request for evidence was submitted. But again, there was no decision made. And then 2012 was this notice of intent to deny. So for those reasons, Your Honor, we do believe that the service was arbitrary and capricious and abusive discretion in its denial of the I-140 petition. Thank you. Thank you. Thank you. Thank you both. We'll reserve decision at this time.